UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| GARY WAYNE SUTTON | ) | |
| | ) | |
| Petitioner, | ) | |
| v. | ) | No. 3:06-cv-388 |
| | ) | (VARLAN/SHIRLEY) |
| RICKY BELL, WARDEN, | ) | |
| | ) | DEATH PENALTY |
| Respondent. | ) | |

**<u>MEMORANDUM & ORDER</u>**

Gary Wayne Sutton ("Petitioner") has filed a petition for writ of habeas corpus under 28 U.S.C. § 2254. Before the Court are Petitioner's amended motion for discovery(Doc. 26), the State's response (Doc. 34), and Petitioner's reply to the response (Doc. 35). Also before the Court is Petitioner's unopposed motion for leave to file a second discovery motion after the expiration of the discovery deadline which will be addressed first (Doc. 39) and his unopposed second motion for discovery (Doc. 40).

Counsel contends she was informed in mid-August that she would be designated lead counsel on this case and she immediately determined a public records request pertaining to Dr. Harlan was appropriate. After making that determination, counsel diligently pursued that avenue of discovery. Counsel was able to collect some discovery from the Department of Health but its General Counsel would not permit her to view several boxes, including material that was protected by attorney-client privilege. Although the discovery and dispositive motion deadlines have passed, as counsel recognizes, absent objection from the Respondent, out of an abundance of caution since this is a death penalty case, and in the interest of efficient judicial administration to avoid further

1

unnecessary delay, the motion requesting Petitioner be allowed to file a second motion for discovery after the deadline will be **GRANTED** (Doc. 39).

In support of his discovery motions, Petitioner claims the prosecution withheld exculpatory evidence which would have demonstrated the lack of reliability and credibility of its rebuttal witness, Dr. Charles Harlan. Dr. Harlan became the Chief Medical Examiner for the State of Tennessee in 1989. However, in 1995, the State declined to renew his contract for the position of Chief Medical Examiner and had to file a declaratory action, to inform him judicially that he no longer occupied that position (Doc. 35, Exhibits A & B). Petitioner asserts that "in 1995, Dr. Harlan commenced a string of shocking professional discrepancies, including lying that he had performed an autopsy when in fact he had not, lying about how identifications on bodies were made, misidentifying bodies, and misidentifying the cause of death in numerous cases" (Doc. 35, Attachment B, p. 6-7). According to Petitioner, the State was well aware of Dr. Harlan's troubles when, without notice to defense counsel, it called him as a rebuttal witness in Petitioner's murder trial and enlisted him to give an opinion as to the time of the victim's death-an opinion which Petitioner contends is false and scientifically unreliable. Indeed, in support of Petitioner's second motion to obtain discovery, Counsel asserts she discovered documents suggesting the Tennessee Bureau of Investigation ("T.B.I.") and the Department of Health were investigating Dr. Harlan for multiple improprieties in 1995, prior to Petitioner's trial (Doc. 40).

Petitioner maintains the requested discovery is necessary to secure records relevant to the investigation of this case, limited depositions related to uncovering critical evidence, and other testimony relevant to issues presently before the Court. Petitioner argues this discovery is necessary

to allow him to assemble additional evidence to present at the evidentiary hearing he intends to seek and to oppose Respondent's anticipated summary judgment motion.

Petitioner argues the requested discovery is relevant not only for the cause-and-prejudice showing necessary to surmount the procedural default barrier of his *Brady/Giglio* claim (Pet., Claim II.B.1. the State's concealment of exculpatory evidence), his *Napue* claim (Pet., Claim II.B.2. the State's presentation of false evidence and/or argument), and his *Strickland* claim (Pet., Claim II. D. trial counsel's failure to rebut Dr. Harlan's testimony), but also to establish those claims.[1] In addition, Petitioner contends he is entitled to discovery to obtain additional proof of innocence, having already made, according to Petitioner, a credible showing of actual innocence with scientific evidence submitted in the form of affidavits from his experts (Pet., Claim II. D. & E.).

The state appellate court denied his request for a remand to develop his *Brady/Giglio, Napue,* and *Strickland* claims and Petitioner theorizes the basis was likely because the State affirmatively represented to the court there was no material suppressed by the state and Dr. Harlan had neither been charged nor found civilly or criminally liable for any wrongdoing in connection with his duties as medical examiner---a representation which Petitioner asserts is incorrect (Addendum No. 43, p. 4).

---

[1] The first two claims are based on allegations that the prosecution failed to give defense counsel exculpatory evidence about Dr. Harlan and failed to correct his testimony indicating he held the position as the State's Chief Medical Examiner at the time of Petitioner's trial, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963); *Giglio v. United States*, 405 U.S. 150 (1972); and *Napue v. People of State of Ill.,* 360 U.S. 264, 269 (1959). The third claim is based on allegations of ineffective assistance of counsel, *i.e.,* that trial counsel, in violation of *Strickland v. Washington*, 466 U.S. 668 (1984), failed to present competent expert testimony to rebut Dr. Harlan's false testimony regarding the victim's time of death.

Respondent argues Petitioner has failed to show the required "good cause" to support an order of discovery. Respondent contends Petitioner has procedurally defaulted on several of the claims raised in his habeas petition and has failed to identify what specific claims will be advanced by the discovery requests. Nevertheless, in addition to responding to each specific request, Respondent contends Petitioner defaulted on his claims concerning Dr. Harlan's testimony, which was presented in rebuttal at petitioner's trial, and has failed to show, as required by 28 U.S.C. § 2254(e)(2), why these factual predicates could not have been discovered prior to filing his habeas petition.[2]

Respondent has missed the mark with his last contention. The issue is not whether Petitioner was faultless for failing to develop a factual basis for certain claims in state court so as to entitle him to an evidentiary hearing pursuant to 28 U.S.C. § 2254(e)(2). Rather, the issue is whether Petitioner has demonstrated good cause to obtain the requested discovery.

**I. Applicable Law**

A habeas petitioner is not entitled to discovery as a matter of ordinary course. *Bracy v. Gramley*, 520 U.S. 899, 904 (1997). Rule 6(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that a habeas petitioner "shall be entitled to invoke the process of discovery available under the Federal Rules of Civil Procedure if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so."

---

[2] The Court observes that 28 U.S.C. § 2254(e)(2) pertains to evidentiary hearings not discovery.

A petitioner has the burden of establishing he is entitled to discovery. *Id.* at 904. Good cause exists where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is entitled to relief. *See Harris v. Nelson*, 394 U.S. 286, 300 (1969); *Lynott v. Story,* 929 F.2d 228, 232 (6th Cir. 1991). Petitioner need not show that additional discovery would definitely lead to relief. Rather, he need only show good cause that the evidence sought would lead to relevant evidence regarding his petition. But, he may not make this showing through vague and conclusory assertions, *see* Rule 6, nor may he embark on a fishing expedition intended to develop claims for which there is no factual basis. *See Ward v. Whitley*, 21 F.3d 1355, 1367 (5th Cir. 1994), *cert. denied*, 513 U.S. 1192 (1995).

Thus, "'[w]here specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is … entitled to relief, it is the duty of the courts to provide the necessary facilities and procedures for an adequate inquiry.'" *Bracy v. Gramley,* 520 U.S. 899, 908-909 (1997) *quoting Harris v. Nelson,* 394 U.S. at 299. But, when making the determination of whether petitioner is entitled to discovery, this Court must remember that, when the state courts have afforded a habeas corpus petitioner a significant opportunity to conduct discovery, this Court must defer to the state court's factual findings. *See Byrd v. Collins*, 209 F.3d 486, 515-16 (6th Cir. 2000), *cert. denied*, 531 U.S. 1082 (2001). The United States Supreme Court has said that "Habeas Corpus Rule 6 is meant to be 'consistent' with *Harris.*" *Bracy*, 520 U.S. at 909; Advisory Committee's Note on Habeas Corpus Rule 6 ("Discovery may, in appropriate cases, aid in developing facts necessary to decide whether to order an evidentiary hearing or to grant the writ . . .").

5

Once good cause is shown, a habeas petitioner may avail himself of the discovery procedures permitted by the Federal Rules of Civil Procedure (including the use of interrogatories, depositions, document requests, and request for tangible evidence) to develop those claims which are properly before the court; to obtain a factual basis on which to excuse procedural default; or to determine whether to request an evidentiary hearing. *See* Rule 6(a).

**II.     Discovery Requests**

   A.     *Tennessee Bureau of Investigation (TBI) Records and Files* (Doc. 26, Request 1; Doc. 40)

In Petitioner's first motion for discovery, for the stated purpose of developing his claim of actual innocence, he seeks the TBI files relative to the investigation and prosecution of the Sevier County case[3] and Blount County case,[4] and all records generated during post-conviction proceedings in his death case. Petitioner's thesis, in part, which underlies his actual innocence claim, is the testimony of Dr. Harlan-the only witness identifying the time of death as a time in which Petitioner was with the victim-is false and thus, does not support the theory that Petitioner was with the victim when he was shot.

Petitioner claims the State's case against him hinged upon the victim being killed on Friday evening, February 21, 1992, at 11:55 p.m. Although this Court need not decide whether Petitioner has stated an actual innocent claim, it cannot help but note that his claim is weak. For example, the State's case against Petitioner did not hinge upon the victim being killed on Friday evening,

---

[3]     In 1993 Petitioner and his co-defendant in the instant case were convicted, in Sevier County, for the first degree premeditated murder of the sister of the victim in the instant case.

[4]     The instant death penalty conviction.

February 21, 1992, at approximately 11:55 p.m., but rather, it hinged upon the victim being shot during that time-frame. Furthermore, the State did not rely upon the time of death in its case-in-chief. Instead, it introduced time-of-death testimony to rebut Petitioner's expert who testified the time of death was twenty-four to thirty-six hours prior to the discovery of the body on February 24, 1992. Moreover, the removal of Dr. Harlan's testimony, based on the facts before this Court,[5] does not necessarily indicate Petitioner is innocent. It is quite conceivable that the victim was shot on February 21, 1992---the time when independent witnesses heard shots in the vicinity where the victim was found, but did not die until a later date. Of course, this would be consistent with the testimony of Petitioner's witnesses that the time of death was the next afternoon or later.

Nevertheless, Petitioner has not shown good cause to discover the TBI files. Absent from Petitioner's argument is any reason to believe that the requested material contains information that either should have been disclosed to the defense or will demonstrate his actual innocence. There is no indication as to what might be uncovered which should have been provided to defense counsel under the prosecution's duty to disclose or what might be found to reveal Petitioner's innocence. Therefore, having failed to show good cause for the discovery of the TBI records, Petitioner's request will be **DENIED**.

However, Petitioner's second discovery motion, which requests specific TBI records relevant to the State investigating Dr. Harlan for improprieties in 1995, before Petitioner's trial, will be **GRANTED IN PART**. Petitioner asserts he has discovered documents, some of which he has attached to his motion, suggesting the TBI and the Department of Health were investigating Dr. Harlan for multiple improprieties in 1995, prior to the date on which he testified in Petitioner's

---

[5] The Court has not read the entire record filed in this case.

capital trial.

Although Petitioner was able to obtain some discovery from the Department of Health, its General Counsel would not permit counsel to review several boxes, including material that was protected by attorney-client privilege and its investigator's files, asserting those files are not subject to disclosure.

Petitioner requests: (1) TBI file 5A-760-NA (files about its investigation into the death of "Baby Murphy." DOB 05/04/95); (2) TBI files about its investigation into the death of Yvette Blackmum, which is mentioned within TBI file 5A-760-NA; and (3) pre-1997 correspondence referring to Dr. Charles Harlan in the files of the Department of Health's Office of General Counsel. Petitioner requests these materials to assist him in demonstrating cause and prejudice or actual innocence to excuse his procedural default on his *Brady/Giglio*, *Napue,* and *Strickland* claims.

Petitioner contends the State used the now "defrocked" Dr. Harlan at his trial without revealing to defense counsel that Dr. Harlan had numerous credibility problems. The documents submitted by Petitioner in support of his second discovery motion suggest that, in 1995, the TBI, as well as the Department of Health and at least one district attorney, were aware of problems with Dr. Harlan's credibility. Thus, it appears the State was investigating Dr. Harlan at the time he was presented as an expert witness in Petitioner's trial, but failed to disclose this information to defense counsel.

Petitioner contends Dr. Harlan's testimony regarding the time of death was incredible and scientifically unfounded. In support of this contention, Petitioner has submitted affidavits from Dr. Stanton Kessler and Dr. Neal Haskell who generally state that Dr. Harlan's opinion regarding the time of death is inaccurate (Doc. 24-2, Attachments B & C). Petitioner contends he is actually

innocent of the murder, as the state's time of death testimony was incorrect and the testimony of his trial expert, who Dr. Harlan discredited, was, in fact, correct.

If Petitioner can demonstrate cause and prejudice or actual innocence to excuse his procedural default, then the District Court will be permitted to analyze his procedurally defaulted claims. Therefore, having carefully considered this matter, based on good cause, the second discovery motion (Doc. 40) will be **GRANTED IN PART** and **DENIED IN PART**.

B. *State Records and Depositions of State Attorneys* (Doc. 26, Requests 2-9)

1. Petitioner's Arguments

Petitioner has requested the records and files in the possession of the Attorney General, the Sevier County District Attorney, the Blount County District Attorney, and the State of Tennessee relating to the procurement and presentation of Dr. Harlan's testimony in the Blount County trial, as well as the records and files generated during post-conviction proceedings, which relate to the State's response to Petitioner's remand motion (Doc. 26, Requests 2 & 3). In addition, Petitioner requests all records in the custody of the State of Tennessee or its agents relating to Dr. Harlan's employment and termination as Tennessee's Chief Medical Examiner. Petitioner also wishes to depose District Attorney General Mike Flynn, Assistant District Attorney General, Edward P. Bailey; former Attorney General & Reporter Paul G. Summers; and Assistant Attorney General Michelle Chapman McIntire, and Dr. Harlan (Doc. 26, Requests 4-9).

Petitioner argues the requested discovery is necessary both to demonstrate cause and prejudice to excuse his procedural default and to develop his *Brady/Giglio, Napue,* and *Strickland* claims. Petitioner asserts that the prosecutor failed to disclose exculpatory evidence to the defense in violation of his constitutional right to due process as set forth in *Brady v. Maryland*, 373 U.S. 83

(1963). Exculpatory evidence includes evidence that can be used to impeach the prosecution's witnesses. *Giglio v. United States*, 405 U.S. 150, 154 (1972). In addition, Petitioner claims the prosecutor knew Dr. Harlan presented false testimony; failed to reveal its falsity; offered the false evidence to the jury; and argued it established Petitioner's guilt.

Petitioner contends the rebuttal testimony of the now "defrocked" Dr. Harlan is not supported within the scientific community and that Dr. Harlan misrepresented himself as the State's Chief Medical Examiner. Petitioner claims that, whereas the State had sued Dr. Harlan for lying about his credentials prior to the State presenting him in his case as a prosecution witness, the State withheld this exculpatory evidence in violation of *Brady* and failed to correct the false testimony in violation of *Napue v. People of State of Ill.,* 360 U.S. 264, 269 (1959) ("A State may not knowingly use false evidence, including false testimony, to obtain a tainted conviction...[even where] the false testimony goes only to the credibility of the witness.").

Although Petitioner did not raise the *Brady/Giglio*, *Napue,* or *Strickland* claims at the state trial level, he did file a motion to remand his post-conviction case to the trial court in the Tennessee Court of Criminal Appeals while his collateral petition was pending upon appeal. Petitioner based his motion to remand on the claim of newly discovery evidence ( *i.e.*, the Tennessee Board of Medical Examiners' permanent revocation of Dr. Charles Harlan's medical license), arguing, in effect, that this amounted to a *Brady/Giglio* and *Napue* violation and also was relevant to his claims of ineffective assistance of counsel and prosecutorial misconduct.

The State filed a response and the appellate court denied the motion to remand after concluding that they "dicern[ed] neither a basis for the post-conviction court adjudicating ineffective assistance of counsel regarding the Dr. Harlan issue nor a sustainable claim that the state suppressed

the evidence or a reasonable probability that, armed with impeaching evidence against Dr. Harlan, the outcome of the trial would have been different." (Addendum No. 45). Both parties' pleadings contain confusing discussions of the *Brady* claim. Nevertheless, the Respondent contends Petitioner has procedurally defaulted on the claims concerning Dr. Harlan's testimony (Doc. 34, p. 5) but, alternatively, asserts that as a matter of law, the Tennessee appellate court determined no *Brady* material existed concerning Dr. Harlan.

    2.    <u>Discussion</u>

It is for the district court to determine whether the issues are exhausted or defaulted and, if defaulted, whether Petitioner has demonstrated cause and prejudice to excuse the default. However, the Tennessee appellate court stated it did not find a sustainable claim that the state suppressed evidence about Dr. Harlan.[6] If the district court determines that finding is an adjudication on the merits it must then determine whether the decision is based on an unreasonable determination of the facts or is contrary to or an unreasonable application of federal law. The state appellate court did not identify the facts upon which it relied to make that determination and did not grant Petitioner's request to file a brief. The record does not reflect that the state court based its conclusion on

---

    [6]    The state's appellate brief included the following paragraph:
> Here, the petitioner can establish neither that the State suppressed information concerning Dr. Harlan's findings nor that the evidence in question is material to the petitioner's convictions. First, the petitioner has identified *no* evidence that was known to or in the possession of the prosecution, let alone any item that was withheld from him by state prosecutors, of any wrongdoing by Dr. Charles Harlan in this case or that otherwise could have been used to impeach his testimony in 1996. In fact, Dr. Harlan had neither been charged nor found civilly or criminally liable for any wrong doing in connection with his duties as medical examiner. In short, there was nothing for prosecutors to withhold in 1996.

[Addendum No. 43]. It appears, from the record before the Court, that this paragraph is not entirely accurate.

11

affidavits or similar evidence, and Petitioner has submitted evidence that arguably contradicts the state court's conclusion. Petitioner presumably contends that he must be allowed to discover facts to demonstrate the appellate state court decision on this claim was based on an unreasonable determination of the facts or is an unreasonable application of clearly established federal law or to establish cause and prejudice to excuse his procedural default.

Discovery may be ordered when it would help the court make a reliable determination with respect to the petitioner's claims. *See Habeas Rule* 6(a); *Harris,* 394 U.S. at 299-300. Moreover, as noted, Petitioner "need not show the additional discovery would definitely lead to relief. Rather, he need only show good cause that the evidence sought would lead to relevant evidence regarding his petition." *Payne v. Bell*, 89 F.Supp.2d 967, 970 (W.D. Tenn. 2000). Petitioner has shown good cause for limited discovery to support his claim that the prosecution withheld evidence or intentionally misrepresented evidence relating to Dr. Harlan. The record reflects that the State declined to renew Dr. Harlan's appointment as its Chief Medical Examiner on June 30, 1995, and pursued judicial remedies when Dr. Harlan attempted to promote, represent, and advertise himself as the Chief Medical Examiner for the State of Tennessee to the general public. In addition, it appears that the State was conducting an investigation of Dr. Harlan and his autopsy decisions. However, Dr. Harlan was presented as an expert witness by the State in this case and he arguably implied he was the Chief Medical Examiner of Tennessee without being corrected by the prosecuting attorney. If the State did suppress this impeaching evidence, contrary to its representations during Petitioner's motion to remand proceedings, serious constitutional questions could be raised about the fairness of his trial.

Petitioner was convicted on September 1, 1996, in the instant case, well after the State

declined to renew Dr. Harlan's appointment. Therefore, the Court finds there is good cause to permit limited discovery to develop facts to demonstrate what information the State possessed about Dr. Harlan at the time they presented him as a witness in the instant case.

There also is good cause to permit: (1) the limited discovery of records in the possession of the Attorney General, the Sevier County District Attorney, and the Blount County District Attorney regarding the procurement of Dr. Harlan's testimony in this trial, and (2) the discovery of all records and files pertaining to the Dr. Harlan issue in the possession of the Attorney General, the Sevier County District Attorney, Blount County District Attorney, and the State of Tennessee and its agents, relating to the State's response to Petitioner's motion for remand filed on June 1, 2005.

Although Petitioner requests to discover all records and files generated during post-conviction proceedings, he has failed to provide good cause, absent any explanation at all for this request. And he has also failed to demonstrate, much less allege, good cause to depose Dr. Harlan and to obtain all records relating to his employment and termination. This is so, given that Petitioner has not explained the reason for this request; he already has the trial transcript of Dr. Harlan's trial testimony explaining his opinion and how he reached his conclusions; and presumably will have the deposition testimony of the State's attorneys which should satisfy his request.

### III. Conclusion

For the reasons stated above:

A. Petitioner's first discovery request to obtain the TBI files relative to the investigation and prosecution of both, the Sevier County and Blount County cases, and all records generated during the post conviction proceeding of his death case is **DENIED**;

B. Petitioner's first discovery request to obtain records from the state relating to the

procurement and presentation of Dr. Harlan's testimony in Petitioner's Blount County trial to determine what the State knew about Dr. Harlan at the time of trial and whether the State misled the appellate court is **GRANTED** to the extent that Petitioner's discovery request are limited to relevant state records concerning Dr. Harlan and the State's information involving his job-related and professional misconduct when they presented him as a witness; Dr. Harlan's role in Petitioner's trial; and whether the State misled the Court of Criminal Appeals in its response to the remand motion**.** In addition, the discovery of records and files is restricted to material from the Attorney General, Sevier County District Attorney, Blount District Attorney, and the State of Tennessee and its agents, and restricted in content to the procurement and presentation of Dr. Harlan's testimony in Petitioner's Blount County trial and in response to Petitioner's motion to remand filed on June 1, 2005;

        C.        Petitioner's first discovery request to depose the prosecuting attorneys and relevant attorneys in the Attorney General's Office to determine what the State knew about Dr. Harlan at the time of trial and whether the State misled the appellate court is **GRANTED** to the extent that Petitioner's deposition inquiries are to be limited to questions concerning Dr. Harlan and the State's information involving his job-related and professional misconduct when they presented him as a witness; Dr. Harlan's role in Petitioner's trial; and whether the State misled the Court of Criminal Appeals in its response to the remand motion**.** Additionally, the depositions are restricted to the prosecuting attorneys and relevant attorneys in the Attorney General's Office;

        D.        Petitioner's request to discover all records and files generated during post-conviction proceedings is **DENIED**;

        E.        Petitioner's request to depose Dr. Harlan and obtain all records relating to Dr.

Harlan's employment and termination is **DENIED**; and

F.      Petitioner's motion to file a second discovery motion after the expiration of the discovery deadline is **GRANTED** (Doc. 39) and his second motion for discovery (Doc. 40) is **GRANTED IN PART** and **DENIED IN PART**.  More specifically, Petitioner's request to subpoena specific TBI files is **GRANTED** but **DENIED** to the extent it requests the documents to be produced to Petitioner or his counsel.  Pursuant to Rules 26, 34, and 45 of the RULES OF CIVIL PROCEDURE all records and documents **SHALL** be released and submitted to the Court for an *in camera* inspection within **twenty (20) days** from the date of service of the subpoena.  The Clerk **SHALL** place the documents **UNDER SEAL**.

Petitioner's counsel is **DIRECTED** to notify the Clerk of Court of the name and address of each person or institution upon which a subpoena will be served and the Clerk **SHALL** mail a courtesy copy of this order to each.  Petitioner's counsel is further **DIRECTED** to issue and serve the necessary subpoenas pursuant to Rule 45 of the Federal Rules of Civil Procedure.

Finally, the Court shall determine if the records contain any information relevant to the constitutional claims raised in Petitioner's habeas petition.  If the documents do not reflect any relevant information, the records will not be available for inspection by anyone.

SO ORDERED.

E N T E R :


    s/ C. Clifford Shirley, Jr.
United States Magistrate Judge